

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **GMAC REAL ESTATE, LLC,** | 06CV3288 |
| Plaintiff, | JUDGE BUCKLO |
| | MAGISTRATE COLE |
| v. | |
| **E. L. CUTLER & ASSOCIATES, INC.,** | |
| Defendant. | |

**FILED**

JUN 1 8 2006
JuN 16, 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### COMPLAINT

Plaintiff, GMAC Real Estate, LLC ("GMACRE"), by its attorneys, as and for its

Complaint against Defendant, E. L. Cutler & Associates, Inc. ("Cutler"), alleges as follows:

### Nature of the Action

1.     This is an action for trademark infringement and unfair competition under the

trademark laws of the United States, for cyber-piracy, and for breach of contract. GMACRE

seeks, among other things, a preliminary and permanent injunction enjoining Cutler's wrongful

and unlawful use of GMACRE's trademarks, service marks and trade names. GMACRE also

seeks damages for Cutler's infringing and other wrongful conduct, as well as the attorneys' fees

and costs it has incurred and will incur in prosecuting this action, as provided by statute and the

parties' written agreements.

### Parties and Jurisdiction

2.     GMACRE is a limited liability company organized and existing under the laws of

the State of Delaware having its principal place of business in the State of Illinois. GMACRE is

engaged in the business of granting to others ("franchisees") the right to operate residential real

estate brokerage offices using various trade and service marks, including the mark "GMAC® Real Estate" (the "GMAC Marks").

3.     GMAC Home Services, Inc. is the only member of GMACRE. GMAC Home Services, Inc. is a Delaware corporation having its principal place of business in the State of Illinois.

4.     Upon information and belief, Cutler is a corporation organized and existing under the laws of the State of Ohio having its principal place of business in Ohio. Cutler is a former franchisee of GMACRE.

5.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. This Court also has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

6.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## The GMAC Marks

7.      GMACRE and its predecessors have developed, and GMACRE is the sole and exclusive owner of a unique and uniform system (the "GMACRE System") relating to the establishment and operation of residential real estate brokerage offices.

8.      To identify the source, origin and sponsorship of GMAC real estate brokerages and the services they offer, and to distinguish those brokerages and services from those established, made, offered and sold by others, GMACRE and its predecessors and affiliates have extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including but not limited to the name and mark "GMAC Real Estate" (the "GMAC Marks").

9.      The mark "GMAC" is registered on the Principal Register of the United States Patent and Trademark Office by GMACRE's ultimate, exclusive licensor. This registration continues in full force and effect.

10.     GMACRE and its predecessors and affiliates have continuously used the GMAC Marks in interstate commerce in connection with the promotion, sale and franchising of real estate brokerages and the promotion and sale of the services they offer throughout the United States.

11.     GMACRE has the exclusive right to use and license the GMAC Marks and derivations thereof in connection with the offer of residential real estate brokerage services to the public. Pursuant to written Franchise Agreements entered into by and between GMACRE and its authorized and approved franchisees, GMACRE grants franchises to qualified persons to own and operate residential real estate brokerages using the GMAC Marks and the GMACRE System, but only in such manner and at such locations as are expressly authorized by GMACRE.

12.     GMACRE and its authorized franchisees use the GMAC Marks as the commercial marks and trade identity by which the advertisement, promotion and sale of real estate brokerage services offered by GMACRE and its authorized franchisees are distinguished from other similar and competitive business operations and the services they offer.

13.     GMACRE, its predecessors and affiliates, and its authorized franchisees have extensively advertised and promoted residential real estate brokerages and the services they offer under the GMAC Marks throughout the United States and through various media. As a result of such efforts and the considerable money spent in connection therewith, the services offered by GMACRE and its authorized franchisees under the GMAC Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

14.     By virtue of their continuous use by GMACRE and its authorized franchisees, the GMAC Marks have earned a secondary meaning in connection with the advertisement, promotion and sale of real estate brokerage services.

## The Parties' Written Service Contract

15.     On or about July 21, 2000, Cutler entered into a written GMAC Real Estate, LLC Real Estate Service Contract (the "Service Contract") with GMACRE pursuant to which GMACRE granted Cutler a franchise to operate residential real estate offices at various locations in Ohio. Under the Service Contract, Cutler received, among other things, a limited license to use the GMAC Marks. A true and correct copy of the Service Contract, together with all Amendments and Addenda thereto, is annexed hereto as Exhibit A and incorporated herein by reference.

16.     Under Section 3 of the Franchise Agreement, Cutler agreed: (i) that its license to use the GMAC Marks was "derived solely from [the Service Contract] and [was] limited to the operation of a real estate brokerage business by" Cutler "pursuant to and in compliance with" the Service Contract; and (ii) that any unauthorized use of the GMAC Marks would constitute a breach of the Service Contract "and an infringement of the rights of GMAC Real Estate in and to the Marks."

17.     Cutler further agreed that upon termination of the Service Contract it would, among other things: (i) discontinue use of all GMAC Marks "and not hold itself out in any manner that would give the public the impression it is still a licensee of GMACRE"; (ii) surrender to GMACRE all signs and documentation bearing the GMAC Marks, including yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials and the like; and (iii) take immediate steps to cancel all advertising which carries the GMAC Marks, including advertising in all telephone directories.

## Cutler's Refusal To Pay The Required Royalty And Advertising Fees

18.     The term of the Service Contract was originally five (5) years, commencing as of July 12, 2000.

19.     Subsequently, for good and valuable consideration, the parties agreed to extend the term of the Service Contract to October 1, 2005.

20.     Under Paragraph 27 of the Service Contract, Cutler had the right to renew its license to use the GMAC Marks, subject to the terms and conditions set forth in the Service Contract.

21.     On or about July 13, 2005, Cutler advised GMACRE that it would not be renewing its relationship with GMACRE. Cutler stated, however, that it did not want to terminate its relationship with GMACRE until January 31, 2006, four (4) months after the expiration of the Service Contract.

22.     On or about August 12, 2006, GMACRE advised Cutler that GMACRE would allow Cutler to continue using the GMAC Marks through January 31, 2006 if, among other things, Cutler agreed to pay GMACRE royalty and advertising fees in accordance with a modified schedule (the "Revised Fee Schedule"). GMACRE further advised Cutler that the Revised Fee Schedule would take effect as of October 1, 2005, the date on which the Service Contract expired. A true and correct copy of the August 26, 2005 letter confirming these terms is annexed hereto as Exhibit B and incorporated herein by reference.

23.     Cutler continued operating under the GMACRE Marks at least through January 31, 2006.

24.     However, Cutler did not and has not paid GMACRE the fees due GMACRE under the Revised Fee Schedule.

25.     As a result of Cutler's failure to comply with the Revised Fee Schedule, the amount of $319,148.43 remains due and owing to GMACRE.

26.     Cutler agreed that in the event collection action was necessary to recover monies due GMACRE, Cutler would pay interest and GMACRE's costs of collection, including attorneys' fees and court costs.

27.     GMACRE has fully performed its obligations under the Service Contract.

## Cutler's Infringement of the GMAC Marks

28.     On or about February 8, 2006, GMACRE sent Cutler a Notice reminding Cutler that the Service Contract was terminated.

29.     The February 8, 2006 Notice reminded Cutler that it owed GMACRE $319,148.43 in fees, as well as fees based on (i) closings occurring on or prior to January 31, 2006, (ii) closings occurring after January 31, 2006 attributed to listings obtained on or prior to the termination date, and (iii) referrals sent or received on or before January 31, 2006.

30.     The February 8th Notice also reminded Cutler that it was required, by February 10, 2006, to cease all use of the GMAC Marks. The letter reminded Cutler that this prohibition extended to all uses of the Marks in, among other things, signage, advertising, yellow page directories, e-mail addresses and/or URL addresses.

31.     Despite this warning and the express obligations set forth in the Service Contract, Cutler continues to use the GMAC Marks.

32.     Among other things, Cutler continues to use the domain name www.cutlergmac.com (the "Domain Name") as one of its URLs.

33.     Furthermore, Cutler placed the metatag "GMAC" into the source code for its "new" domain name, www.cutlerhomes.com. As a result, searches for "Cutler Homes" and "GMAC Real Estate Ohio" link consumers to www.cutlergmac.com, not Cutler's new domain name.

34.     Cutler's use and maintenance of the Domain Name and its purpose in using the metatag "GMAC" on its new website was to wrongfully misappropriate, trade on and profit from the goodwill associated with the GMAC Marks.

35.     Cutler's use of the GMAC Marks, the Domain Name and the metatag "GMAC" is without the license or consent of GMACRE and has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship.

36.     In addition to the fact that both GMACRE and Cutler offer the identical services at their brokerages, the services provided by Cutler using the GMAC Marks are offered to the same class of consumers as those who patronize authorized GMACRE brokerages. Upon seeing the familiar GMAC Marks through Cutler's unauthorized use thereof, consumers will be deceived into concluding that Cutler's brokerage, and the services offered and sold in connection therewith, are subject to GMACRE's supervision, are sponsored or endorsed by GMACRE and bear the GMAC Marks pursuant to GMACRE's authority and permission.

37.     So long as Cutler continues to use the GMAC Marks and the Domain Name, consumers have no practical way of knowing that Cutler is no longer affiliated with, or sponsored, authorized or endorsed by, GMACRE. As a result, any consumer dissatisfaction with Cutler's brokerages, or with the services offered in connection therewith, will be attributed to GMACRE and the entire GMACRE network.

38.     Cutler has received actual notice of its violation and infringement of the GMAC Marks and has constructive notice of GMACRE's rights in the Marks and the registrations thereof pursuant to 15 U.S.C. § 1072. Cutler's continued infringement is willful, malicious, fraudulent and deliberate.

## COUNT I
### (Breach of Contract)

39. GMACRE realleges and incorporates paragraphs 1 through 38 of its Complaint, inclusive, as and for this Paragraph 39, as if fully set forth herein.

40. Cutler has breached the Service Contract by, among other things, failing and refusing to pay to GMACRE the fees due under the Revised Fee Schedule.

41. As a direct and proximate result of Cutler's breaches, GMACRE has suffered damages in an amount to be proven at trial, but in excess of $319,148.43.

## COUNT II
### (Cyber Piracy – 15 U.S.C. §1125(d)(1)(A))

42. GMACRE realleges and incorporates by reference paragraphs 1 through 41 of its Complaint, inclusive, as and for this Paragraph 42, as if fully set forth herein.

43. The Domain Name incorporates the GMAC Marks and is confusingly similar to the GMAC Marks. Cutler has used, and continues to use the Domain Name, in a bad faith effort to profit from the GMAC Marks and the goodwill associated therewith and divert consumers from GMACRE and its authorized franchisees.

44. As a direct and proximate result of Cutler's acts, GMACRE has been substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

45. Unless enjoined by the Court, Cutler will continue to use the Domain Name, to GMACRE's irreparable injury.

## COUNT III
### (Lanham Act – Trademark Infringement)

46.     GMACRE realleges and incorporates by reference paragraphs 1 through 45 of its Complaint, inclusive, as and for this Paragraph 46, as if fully set forth herein.

47.     Cutler's acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the GMAC Marks, and Cutler's sale, offering for sale, distribution or advertising of goods and services under the GMAC Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1).

48.     Cutler has actual notice of its violation and infringement of the GMAC Marks and has notice of GMACRE's rights in the GMAC Marks and the registrations thereof pursuant to 15 U.S.C. § 1072, and its infringement is willful and deliberate.

49.     The GMAC Marks are unique and represent to the public GMACRE and its affiliates' identity, reputation, and goodwill, such that damages alone cannot fully compensate GMACRE for Cutler's misconduct.

50.     As a direct and proximate result of Cutler's infringement, GMACRE has been substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

51.     Unless enjoined by the Court, Cutler will continue to use and infringe the GMAC Marks, to GMACRE's irreparable injury.  This threat of future injury to GMACRE's business identity, goodwill, and reputation requires injunctive relief to prevent Cutler's continued use of the GMAC Marks and to ameliorate and mitigate GMACRE's injury.

## COUNT IV
### (Lanham Act - Unfair Competition)

52.     GMACRE realleges and incorporates by reference paragraphs 1 through 51 of its Complaint, inclusive, as and for this Paragraph 52, as if fully set forth herein.

53.     Cutler's acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C § 1125(a).

54.     The GMAC Marks are unique and represent to the public GMACRE and its affiliates' identity, reputation, and goodwill, such that damages alone cannot fully compensate GMACRE for Cutler's misconduct.

55.     As a direct and proximate result of Cutler's unfair competition, GMACRE has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

56.     Unless enjoined by the Court, Cutler will continue to use and infringe the GMAC Marks, to GMACRE's irreparable injury. This threat of future injury to GMACRE's business identity, goodwill, and reputation requires injunctive relief to prevent Cutler's continued use of the GMAC Marks and to ameliorate and mitigate GMACRE's injury.

## COUNT V
### (Breach Of Contract – Post-Termination Obligations)

57.     GMACRE realleges and incorporates by reference paragraphs 1 through 56 of its Complaint, inclusive, as and for this Paragraph 57, as if fully set forth herein.

58.     Cutler has failed and refused to perform its post-termination obligations under the Service Contract, including its obligations to (i) discontinue use of all GMAC Marks, and (ii) take immediate steps to cancel all advertising which carries the GMAC Marks.

59.     Unless ordered by the Court to perform its post-termination obligations under the Service Contract, Cutler will continue to breach its post-termination obligations.

60.     GMACRE has been, and unless Cutler is ordered to perform its post-termination obligations under the Service Contract, GMACRE will continue to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill, for which GMACRE has no adequate remedy at law.

61.     This threat of future injury to GMACRE's business identity, goodwill, and reputation requires that Cutler be ordered to perform its post-termination obligations under the Service Contract to prevent Cutler's continued breaches and to ameliorate and mitigate GMACRE's injury.

**WHEREFORE**, GMAC Real Estate, LLC requests that this Court enter judgment in its favor, and against E.L. Cutler & Associates, Inc., as follows:

(a).    A preliminary and permanent injunction enjoining Defendant, its agents, servants and employees, and those people in active concert or participation with it, from:

1.      Using the GMAC Marks or any trademark, service mark, logo or trade name that is confusingly similar to the GMAC Marks;

2.      Otherwise infringing the GMAC Marks or using any similar designation, alone or in combination with any other components;

3.      Passing off any of its products or services as those of GMACRE or its authorized franchisees;

4.      Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of its business, products or services;

5.  Causing a likelihood of confusion or misunderstanding as to its affiliation, connection or association with GMACRE and its franchisees or any of GMACRE's products or services; and

6.  Unfairly competing with GMACRE or its franchisees in any manner;

(b).  An Order directing Defendant to immediately perform its post-termination obligations under the Service Contract, including, without limitation, its obligations: (i) to surrender to GMACRE all signs and documentation bearing the GMACRE Marks, including yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials and the like; and (ii) to take immediate steps to cancel all advertising which carries the GMAC Marks, including all advertising in all telephone directories;

(c).  An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in the possession of Defendant, its affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with it, bearing the GMAC Marks, and all plates, molds, and other means of making the same, if any, be delivered to GMACRE at Defendant's cost;

(d).  That Defendant be required promptly to eliminate its advertising under the GMAC Marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings, mass mailings, and URLs, all at Defendant's cost;

(e).  That Defendant be required to file with the Court and to serve upon GMACRE's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which it has complied with such injunction or order;

(f).  That Defendant account and pay over to GMACRE all gains, profits and advantages derived by it as a result of its infringement of the GMAC Marks, breach of contract and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

(g).  That Defendant pay to GMACRE such damages as GMACRE has sustained by reason of said trademark infringement, breach of contract and unfair competition; and that, because of the willful nature of said infringement, the Court enter judgment for GMACRE for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

(h).  On Count I of the Complaint, for the damages GMAC Real Estate, LLC has incurred as a result of Defendant's breaches of the Service Contract, in an amount

to be proven at trial, but in excess of $319,148.43, plus pre-judgment interest and the attorneys' fees and costs incurred in bringing this action;

(i).  On Count II of the Complaint, an Order transferring for the purposes of disabling the domain name www.cutlergmac.com to GMACRE, together with the damages incurred by GMACRE; and

(j).  Such other and further relief as the Court deems just and proper.

GMAC REAL ESTATE, LLC

By: _____
One of its Attorneys

Norman M. Leon (#6239480)
John A. Hughes (#6275159)
**DLA Piper Rudnick Gray Cary US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
(312) 368-4000

# EXHIBIT A

# GMAC Real Estate, LLC

# Real Estate Service Contract

**2000**
53M/54YTD/80SF

# TABLE OF CONTENTS

**Page**

1. THE SERVICE. ..................................................................................................... 1
2. RELATIONSHIP OF THE PARTIES. ................................................................. 1
3. THE MARKS. ....................................................................................................... 2
4. MATERIALS. ....................................................................................................... 3
5. TRAINING. ........................................................................................................... 4
6. GRANT OF THE LICENSE. ................................................................................ 5
7. TERRITORIAL RIGHTS. .................................................................................... 6
8. NO CONFLICTING LICENSE. ........................................................................... 6
9. RESIDENTIAL COMMISSION AND FEE INCOME. ....................................... 6
10. FEES. ..................................................................................................................... 7
11. PAYMENT OF FEES. .......................................................................................... 8
12. LATE PAYMENT. ............................................................................................... 8
13. VERIFICATION RIGHTS. ................................................................................... 8
14. REFERRALS. ....................................................................................................... 9
15. PERFORMANCE STANDARDS. ........................................................................ 9
16. ASSIGNMENT AND OWNERSHIP ................................................................... 10
17. TERMINATION. ................................................................................................... 11
18. OBLIGATIONS UPON TERMINATION. ........................................................... 13
19. REPRESENTATIONS AND WARRANTIES ...................................................... 14
20. ENTIRE AGREEMENT. ...................................................................................... 15
21. INDEMNIFICATION AND INSURANCE. ......................................................... 15
22. CHOICE OF LAW. ............................................................................................... 15
23. MODIFICATION OF CONTRACT. ..................................................................... 15
24. SEVERABILITY ................................................................................................... 15
25. NON-WAIVER. ..................................................................................................... 16
26. NOTICES. .............................................................................................................. 16
27. TERM AND RENEWAL. ..................................................................................... 16
28. DATE. .................................................................................................................... 17

## EXHIBITS

A - Member's Licensed Territory
B - Joining Addendum

i

A Contract between **GMAC REAL ESTATE, LLC**, a Delaware limited liability company, with its principal offices at 477 Martinsville Road, Liberty Corner, New Jersey 07938 ("GMAC Real Estate"); and

E. L. Cutler & Associates, Inc.
Exact name under which Real Estate License is
held, ("Member")

DBA   Cutler

(Any change in DBA requires prior written
approval)

FEDERAL ID# 341017510

## 1. THE SERVICE.

GMAC Real Estate and its predecessors have developed a service (the "Service") which will permit use of the Marks (as defined in Section 3) including the Mark "GMAC Real Estate" in the promotion and sale of residential real estate. The Service provides those firms selected to be members with the opportunity to use the Marks and to participate in the other benefits outlined in this Contract.

GMAC Real Estate will provide guidelines regarding the use of the GMAC Real Estate name and other Marks. Such guidelines are intended to maximize the value of the nationally recognized image of GMAC Real Estate and improve the effectiveness of Members' advertising, public relations, personnel recruiting, and sales promotion programs.

GMAC Real Estate facilitates referrals between members and develops systems and programs to deliver sales training and education, management training, and client promotional materials to its members. GMAC Real Estate will periodically provide a national convention for the benefit of the membership.

GMAC Real Estate will strive continually to improve the Service through development of new programs and review of existing programs. GMAC Real Estate will seek recommendations from members that will strengthen the organization at local and national levels.

## 2. RELATIONSHIP OF THE PARTIES.

The relationship of the parties is that of two independently owned and operated businesses which share similar mutual interests: to grow and prosper through the sale of residential real estate.

Member agrees to conduct its real estate brokerage business in such fashion as to reflect favorably at all times on GMAC Real Estate and the good name, goodwill, and reputation thereof, and in compliance with all laws and regulations pertaining to the operation of its real estate brokerage business.

## 3.    THE MARKS.

### A.    OWNERSHIP AND MODIFICATION OF THE MARKS

GMAC Real Estate, LLC is the owner or licensee of the GMAC Real Estate trademarks, service marks, logos, designs, colors, and other commercial symbols used to identify the products and services offered by GMAC Real Estate franchises, including the mark "GMAC REAL ESTATE" (collectively the **"Marks"**).  The Marks may include certain logos owned by Meredith Corporation.  Meredith Corporation has granted to GMAC Real Estate a license to use and to sublicense these logos.  Member acknowledges that Member's right to use the Marks is derived solely from this Contract and is limited to the operation of a real estate brokerage business by Member pursuant to and in compliance with this Contract and all applicable standards, specifications, and operating procedures prescribed by GMAC Real Estate from time to time during the term of this Contract.  Any unauthorized use of the Marks by Member shall constitute a breach of this Contract and an infringement of the rights of GMAC Real Estate in and to the Marks. GMAC Real Estate will protect and defend the Marks in order to maintain their value to Member and GMAC Real Estate.  Member agrees that all goodwill resulting from its use and promotion of the Marks will accrue to the benefit of GMAC Real Estate.

If it becomes advisable at any time in the sole judgment of GMAC Real Estate to modify or discontinue use of any Mark and/or for Member's business to use one or more additional or substitute trademarks or service marks or substitute trade dress, Member agrees to comply with the directions of GMAC Real Estate to modify or otherwise discontinue the use of such Mark and/or to use one or more additional or substitute trademarks, service marks, logos or commercial symbols or substitute trade dress after notice thereof by GMAC Real Estate.  All provisions of this Contract applicable to the Marks shall apply to any other trademarks, service marks and commercial symbols hereafter authorized in writing for use by and licensed to Member by GMAC Real Estate.  The term "Marks" shall include any marks developed and/or registered in the future.

GMAC Real Estate shall have no obligation to reimburse Member for any expenditures made by Member to modify or discontinue the use of a Mark or to adopt substitutes for a discontinued Mark including without limitation any expenditures relating to advertising or promotional materials or to compensate Member for any goodwill related to the discontinued Mark.  Notwithstanding the foregoing, if GMAC Real Estate changes the primary service mark of the system so that it no longer includes the words "GMAC Real Estate" or some variation thereof, GMAC Real Estate will (a) provide Member twelve (12) months' prior written notice of the change and (b) allow Member to terminate this Contract at the end of the twelve month notice period.  If Member elects to so terminate this Contract, Member shall notify GMAC Real Estate in writing at least ninety (90) days before the expiration of the twelve month notice period and shall comply with all post-termination obligations contained in this Contract.

2

## B.    USE OF MARKS.

To maintain the integrity of the Marks and the Service, GMAC Real Estate has the right to control the quality of all materials and programs bearing the Marks and the manner in which the Marks are used.

The Marks shall be used: (1) only in conjunction with permanent real estate sales offices approved by GMAC Real Estate, and (2) only in the form and style authorized by GMAC Real Estate as outlined from time to time in its manuals.  Any departure from the manuals or any use of the Marks on printed materials not outlined in the manuals must be approved in advance in writing by GMAC Real Estate.  Use of the Marks on any other publication (e.g., homeowner newsletter, decorating magazine, or booklets) is specifically prohibited unless the publication is approved in writing by GMAC Real Estate prior to publication.

It is agreed that Member will use the Marks in all residential real estate brokerage activities within the Licensed Territory (as described in Section 6) during the term of this Contract. Use of the Marks on non-residential real estate brokerage activities or in any other manner is prohibited.

The Marks shall not be used to identify any property, goods, or services provided by Member other than those specifically approved in writing by GMAC Real Estate.   It is understood that Member will not use the Marks in any manner which indicates or implies GMAC Real Estate endorsement of the home being sold by Member, including its design, quality, or price.

Member shall not use the GMAC Real Estate name or any other Mark as part of its corporate name, as part of an Internet (or other computer network) domain name or in any other manner not expressly authorized in writing by GMAC Real Estate.  The Marks shall be used as part of the trade name of Member for residential real estate brokerage activities only.

Because complete and detailed uniformity under many varying conditions may not be possible or practical, GMAC Real Estate specifically reserves the right and privilege, in its sole discretion and as it may deem in the best interests of all concerned in any specific instance, to vary standards for any member based upon the peculiarities of particular circumstances, business practices or any other conditions which GMAC Real Estate deems to be of importance to the successful operation of such member's business.  Member shall have no recourse against GMAC Real Estate for any variation from standard specifications and practices granted to any other member and shall not be entitled to require GMAC Real Estate to grant Member a like or similar variation.

## 4.    MATERIALS

Member agrees that use of all GMAC Real Estate materials (including copyrighted materials) is restricted to use in its own business.  Member will not license GMAC Real Estate materials and programs to others or reproduce such materials and programs for its own use, or adapt and use, or permit any of its sales associates to adapt and use, any GMAC Real Estate

3

materials on an Internet (or other computer network) site or in any other manner without advance written approval by GMAC Real Estate.

To maintain consistency, all building signs, yard signs, promotional items, and printed materials must adhere to the design, size, and colors specified in the manuals supplied by GMAC Real Estate from time to time. Any departure from the specifications set forth therein must be approved in writing in advance by GMAC Real Estate. Substitution of materials that are used in the construction of these items, or lack of compliance with the specified design, size, coloration, or use of the Marks is unacceptable and will be deemed a breach of this Contract. Each office will display building signs in conformance with the specified standards of design and materials within sixty (60) days of the Opening Date. If a particular zoning ordinance or lease restriction precludes use of a standard approved sign, the specifications for an alternate sign must be presented for approval to GMAC Real Estate with a copy of the zoning ordinance or lease restriction.

All business records, letterheads, business forms, advertising and other materials (excluding business cards) disseminated to the public and used in the business licensed hereunder shall indicate Member's independent ownership of the brokerage business with the statement "An Independently Owned and Operated Firm" or an equivalent statement.

GMAC Real Estate will provide the initial development of a new logo treatment for Member, at no cost. GMAC Real Estate will provide a franchise opening/starter kit, including operating and presentation manuals, videotapes, audio tapes, advertising materials, magazines and marketing products, at no cost.

## 5.   TRAINING.

For New Members: GMAC Real Estate agrees to conduct a Management Orientation Session ("MOS") in Des Moines, Iowa; Liberty Corner, New Jersey; or such other location GMAC Real Estate designates. Member agrees to attend the first available MOS after execution of this Contract. GMAC Real Estate will pay the MOS registration fee for one principal broker or key manager of Member to attend an MOS at the site selected by GMAC Real Estate; provided that the designated person attends MOS within twelve (12) months of the Opening Date in Section 28 of this Contract.

For Renewing Members: Within six (6) months of renewal, Member shall send, at its expense, at least one key management representative (for example, broker, general manager or sales manager) to an MOS at a site GMAC Real Estate designates.

4

6. **GRANT OF THE LICENSE.**

Member represents that it presently operates offices, or will by the Opening Date operate offices at the following locations:

| Location | See Office Locations Exhibit. |
|----------|-------------------------------|
| Location | |
| Location | |
| Location | |

GMAC Real Estate grants to Member an exclusive license to establish and operate residential real estate office(s) displaying the Marks within its Licensed Territory as follows:

☐     If this block is checked, Member's Licensed Territory shall be its existing office location(s). If Member desires to open additional offices, it shall apply to GMAC Real Estate for written permission to do so. If the location of the proposed additional office is in an area not licensed to another member, GMAC Real Estate may grant such permission and may, at its option, charge Member a Joining Fee for an Expansion Territory.

☒     If this block is checked, Member's Licensed Territory is described in the written description set forth in **Exhibit A** to this Contract. Member may open additional offices in the Licensed Territory provided that it must notify GMAC Real Estate in writing of the location of each office before such office opens. The continuance of Member's exclusivity in the Licensed Territory is conditioned upon Member meeting the periodic Performance Standards set forth in **Exhibit A** and may be reduced as provided therein

Irrespective of whether Member is required to obtain permission from GMAC Real Estate to open additional offices, Member shall notify GMAC Real Estate in writing in the event it opens such offices or acquires additional offices as the result of an acquisition or merger and, if the acquisition or merger involved another GMAC Real Estate firm in market area(s) not contiguous to Member's Licensed Territory, GMAC Real Estate may require that the offices gained by Member in such transaction be treated as a separate reporting unit for the purpose of computing Service Fees as provided in Section 10 below. Nothing in this Section shall preclude Member from listing, selling, or advertising residential real estate outside its Licensed Territory or in an adjacent member's licensed territory. Commissions and fees from such transactions shall be included in the Member's Residential Commission Income report to GMAC Real Estate.

Member shall neither (a) establish or own an interest in any real estate brokerage office or real estate information center within the Licensed Territory not licensed by GMAC Real Estate nor (b) establish or own an interest in any real estate brokerage office or real estate nformation center using the Marks located outside the Licensed Territory without the written approval of GMAC Real Estate.

Member understands and agrees that it may not sublicense the GMAC Real Estate name or any other Mark.

## 7. TERRITORIAL RIGHTS.

GMAC Real Estate reserves the right to license other real estate brokers to use the Marks in any area not licensed to Member. GMAC Real Estate reserves the right to establish anywhere franchises or company-owned outlets or other channels of distribution selling or leasing similar products or services under a different trademark.

## 8. NO CONFLICTING LICENSE.

During the term of this Contract, irrespective of whether this Contract is terminated prior to the end of its term pursuant to Section 17, neither Member nor its principals, owners or Broker of Record shall become affiliated with any other real estate licensing system; provided, however, that the Broker of Record of Member shall not be subject to this provision if Member is sold or goes out of business unless he or she is also an owner.

## 9. RESIDENTIAL COMMISSION AND FEE INCOME.

Commission and fee income generated from the sale of residential real property ("Residential Commission Income") are used as the basis for the calculation of fees. Residential Commission Income is computed after division with cooperating brokers in other firms and after payment of referral fees. No expenses or membership fees of any type (including multiple listing service fees) or division with brokers and sales associates working in association with Member may be deducted in the computation of Residential Commission Income.

a. "Residential Commission Income" is defined as the sum of all commissions and other fees received by Member including any mortgage, lien, or other consideration held or earned by Member in lieu of a commission. Residential Commission Income shall include any selling bonuses, document preparation fees and administration fees. Referral payments received from GMAC Real Estate are not included in Residential Commission Income.

b. "Residential Real Property" is defined as new and resale single family homes, farm houses, residential acreage, condominiums and cooperatives, townhouses, vacation homes including interval-ownership/ time-share homes, mobile homes when affixed to real property, residential listings sold at auction, housing of up to and including four-dwelling units on one lot, all unimproved single lots, and other unimproved land and vacant lots intended by the purchaser thereof to be used for recreational purposes or as "Residential Real Property" as that term is otherwise defined in this Section.

c. Member is not required to include in its Residential Commission Income commissions or fees earned in connection with rental, property management or commercial real estate transactions or commissions and fees attributable to the non-residential portion of farm transactions.

6

10.    **FEES.**

In consideration for the license and for this Contract, Member agrees to pay the following fees to GMAC Real Estate:

a.    **Joining Fee**.  If this is Member's initial Contract and not a renewal Contract, Member agrees to pay a Joining Fee in an amount and subject to the terms and conditions set forth in the Joining Addendum attached hereto as **Exhibit B**.

b.    **Service Fee**.  A Service Fee is due and payable within ten (10) days after the end of each month on Residential Commission Income received by Member during the previous month. Member's Service Fee shall be computed on a cumulative, yearly basis, with the amount of such Service Fees to be determined in accordance with the following Service Fee Table:

| | Member's Year-to-Date Residential Commission Income Ranges | | | Applied Percentage |
|---|---|---|---|---|
| On the first | $250,000 | (Up to | $250,000 RCI) | 7.00% |
| On the next | 750,000 | ($250,001 - | 1,000,000 RCI) | 6.00% |
| On the next | 1,500,000 | ($1,000,001 - | 2,500,000 RCI) | 5.00% |
| On the next | 2,500,000 | ($2,500,001 - | 5,000,000 RCI) | 4.00% |
| On the next | 2,500,000 | ($5,000,001 - | 7,500,000 RCI) | 3.50% |
| On the next | 2,500,000 | ($7,500,001 - | 10,000,000 RCI) | 3.00% |
| On the next | 5,000,000 | ($10,000,001 - | 15,000,000 RCI) | 2.50% |
| On all remaining RCI | | (Over $15,000,000 RCI) | | 2.00% |

For purposes of computing fees, the start of each year shall be the anniversary of Member's Opening Date.

New Members are not required to pay Service Fees on Residential Commission Income earned as a result of transactions under contract or in escrow on the Opening Date, provided that such transactions are closed within thirty (30) days of the Opening Date.

GMAC Real Estate may spend a portion of the Service Fees collected on advertising and promotion of the GMAC Real Estate system and its Members.  GMAC Real Estate shall have sole discretion over the amount it spends on advertising, and over the creative concepts and media used in any advertising.  Member acknowledges that any advertising is intended to enhance the reputation of the system generally, and that GMAC Real Estate undertakes no obligation to ensure that advertising expenditures are proportionate to or equivalent to any particular member's fees paid.

c.    **Referral Office Fee**.  A Referral Office Fee of $438 per year shall be paid by Member for each office using the Marks; provided, however, that Member shall be charged only one referral office fee in any year its Residential Commission Income is less than $500,000.  The Referral Office Fee shall be paid in monthly installments and shall be billed to Member's account.  Member will advise GMAC Real Estate within thirty (30) days of the opening or closing of any office.  As used in this Section, "office" means residential real estate sales office

and specifically excludes offices used solely for administrative purposes, mall kiosks or pushcarts and model home sales sites.

     d. **Referral Fee**. Within ten (10) days after closing, each Member who receives a referral from GMAC Real Estate or any of its members or affiliates which results in a closing shall make payment in accordance with Section 14 of this Contract.

     e. **Renewal Fee**. A renewal fee of $250 is due upon each renewal of this Contract.

     f. **Transfer Fee**. A transfer fee of $250 will be due upon approval by GMAC Real Estate of a transfer of this Contract or of more than a thirty percent (30%) ownership interest in Member or of a controlling interest.

     g. **Convention Registration Fee**. Member shall pay a convention registration fee, which shall be billed to Member's account within ninety (90) days after the convention. The convention registration fee shall be an amount equal to the lowest-priced registration fee offered in connection with such convention, and payment of this fee shall entitle Member to one registration at such convention.

## 11.    PAYMENT OF FEES.

     Member agrees to report and make payment of Service Fees to GMAC Real Estate within ten (10) days after the end of each month using forms provided or computer software recommended by GMAC Real Estate. Member agrees to furnish any other reports, such as annual financial statements, as reasonably requested by GMAC Real Estate.

## 12.    LATE PAYMENT.

     Should Member become delinquent on any deferred payment plan, GMAC Real Estate shall have the right to accelerate the balance and declare the entire amount due. Additionally, if Member is late paying any amount owed to GMAC Real Estate, Member agrees to pay GMAC Real Estate interest at a rate which will not exceed an annual rate of prime plus four percent (4%), but in any event not less than twelve percent (12%) or more than fifteen percent (15%) on the unpaid amount after the due date. Prime is defined as the rate charged by Citibank, N.A., New York City, to its most credit-worthy customers for 90-day loans. In the event Member fails to pay any amount when due, GMAC Real Estate shall also have the right, at its option, to deduct any and all such amounts from any payments due to Member pursuant to this Contract or otherwise. In the event collection action is necessary to recover monies due GMAC Real Estate, Member agrees to pay interest and costs of collection, including agency and attorneys fees and court costs.

## 13.    VERIFICATION RIGHTS.

     Member agrees to provide annual financial statements in a form acceptable to GMAC Real Estate. Member must keep a separate set of books and records for the residential real estate brokerage business it conducts pursuant to this Contract. Member agrees to permit a GMAC Real Estate representative to inspect and audit Member's accounting records and books for each line

of business in which Member engages. During the course of an audit, if GMAC Real Estate discovers a shortage of three percent (3%) or more in Residential Commission Income reported, Member agrees to pay GMAC Real Estate, in addition to any amounts due, an interest payment as outlined in Section 12, plus the actual travel costs and expenses of the auditors involved in the audit. GMAC Real Estate shall have the right to inspect Member's offices and to confer with Member, its sales associates and its employees to assure compliance with quality standards GMAC Real Estate prescribes from time to time.

## 14.  REFERRALS.

Member agrees to place all residential real estate referrals with GMAC Real Estate members or designated approved brokers, whether or not there is a member in the destination location. Where the referral is to an area yet unlicensed, GMAC Real Estate will select a firm which, in its judgment, is qualified to handle such referrals. Referrals may be placed through GMAC Real Estate or directly with the approved destination broker. Member agrees to register all residential referrals. Designated, approved brokers may include a broker approved under a strategic alliance agreement or a non-member in a market where no GMAC Real Estate member exists. Member agrees to pay referral fees and royalties as hereafter set forth.

Member agrees that upon receipt of a commission involving a referral – whether buying or listing – it will remit to GMAC Real Estate a fee equal to two and-one-half percent (2.5%) of the Residential Commission Income earned from the referred side of the transaction. Member also will remit to the real estate brokerage from which the referral originated twenty-two and one-half percent (22.5%) of the Residential Commission Income earned from the referred side of the transaction.

Failure by Member to comply with the policies, standards, and procedures regarding referrals constitutes a breach of this Contract and GMAC Real Estate may, at its option, suspend further referrals to Member, require relocation training attendance, or terminate Member in accordance with Section 17 of this Contract. GMAC Real Estate also may, at its option, suspend further referrals to Member if Member is in breach of any other provision of this Contract or fails to execute a renewal Contract on a timely basis.

Member acknowledges that it acquires no rights or expectations with respect to referrals beyond those expressly stated in this Section.

## 15.  PERFORMANCE STANDARDS.

Member agrees that market coverage, consistent performance, recruitment and training of a full-time, professional sales staff and commitment to GMAC Real Estate programs are necessary for retention of the license granted by this Contract.

Member's performance shall be reviewed annually on the anniversary of Member's Opening Date. Member's average Residential Commission Income shall, for the twelve (12) month period being reviewed, exceed seventy-five percent (75%) of the higher of (a) Residential Commission Income attained during the first twelve (12) months after the Opening Date, or (b) the average of the thirty-six (36) months prior to the most recent twelve (12) month period being

reviewed. If Member has been open less than forty-eight (48) months, the monthly average of the comparison period will be based on the number of months open, but never less than twelve (12) months. Failure by Member to meet this performance standard shall constitute a default under this Contract, and GMAC Real Estate may, at its option, terminate this Contract.

## 16.    ASSIGNMENT AND OWNERSHIP

a.  **Assignment.**  GMAC Real Estate shall have the right to transfer or assign all or any part of its rights or obligations under this Contract to any person or legal entity.

Member acknowledges that GMAC Real Estate entered into this Contract in reliance upon the qualifications and representations of Member and, where Member is a partnership, corporation or other entity, upon the qualifications and representations of Member's principals and majority stockholders, respectively. Therefore, Member may assign this Contract (1) only in conjunction with the transfer of ownership of the assets of its real estate brokerage business, (2) only to the new owner thereof, (3) only where all of Member's accrued monetary obligations and all other outstanding obligations to GMAC Real Estate have been satisfied, (4) and only upon written request and with the prior written approval of GMAC Real Estate, such approval not to be unreasonably withheld. Member shall remain liable for all of the obligations to GMAC Real Estate in connection with the franchised business prior to the effective date of the transfer. Any transfer or assignment of an ownership or other interest in Member which would have the effect of transferring control of Member shall be made only (1) where all of Member's accrued monetary obligations and all other outstanding obligations to GMAC Real Estate have been satisfied and (2) upon written request and with the prior approval of GMAC Real Estate, such written approval not to be unreasonably withheld.

GMAC Real Estate will require a copy of the transfer agreement and may require, as a condition of the transfer, the following:

(1)    Execution by the assignee of a new Real Estate Service Contract in the form then being offered by GMAC Real Estate, and

(2)    Attendance by the principal of the assignee at a Management Orientation Session.

b.  **Ownership.**  Member shall identify below the type of business entity which Member has formed. Listed below are the principals and the shareholders who own a ten percent (10%) or more interest in Member and the percentage interest each owns. Member will notify GMAC Real Estate in writing prior to any change in the percentage interests shown below. Member will also notify GMAC Real Estate in writing prior to any change of the Broker of Record named below. (If Member is owned by another legal entity, Member shall also identify that entity and its majority Shareholders.)

    XXX    corporation:  organized under the laws of the State of   Ohio    

    ☐    limited  liability  company:    organized  under  the  laws  of  the  State  of

10

☐     partnership: organized under the laws of the State of _____

☐     sole proprietorship

| James L. Bray | 33.3 % | _____ | ____ % |
| Jay L. Cutler | 33.3 % | _____ | ____ % |
| James H. Camp | 33.3 % | _____ | ____ % |

(Principals/Shareholders listed)

_____
(Parent Company)

James L. Bray
_____
(Broker of Record)

    c. **Constructive Transfer.** Any transfer upon the death or mental incapacity of a Member or any principal or shareholder of Member, which transfer would result in a transfer of control of Member or of the franchised business, shall be deemed a transfer subject to Section 16.a. An individual Member's survivor (if business is held in joint tenancy), heirs, legatees, guardian, personal representative or conservator, or if a Member is a partnership or corporation, the remaining principals or shareholders, together with the deceased or incapacitated principal's or shareholder's survivor, heirs, legatees, guardian, personal representative or conservator, may continue to operate the business subject to written notification of GMAC Real Estate and satisfaction by the heirs, legatees, guardian, personal representative or conservator of the conditions of Section 16.a for transfer of interest.

    d. **Notice of Transfer.** Member will notify GMAC Real Estate as early as practicable of acquisition or merger negotiations and in any event will notify GMAC Real Estate at least ninety (90) days prior to the proposed transfer of ownership of its real estate business.

## 17.     TERMINATION.

    This Contract may be terminated upon any one of the following conditions (in addition to the conditions specifically mentioned elsewhere in this Contract). State law may set forth requirements for termination or nonrenewal procedures which differ from those set forth herein. Prior to the effective date of termination, Member shall pay all monies due to GMAC Real Estate, and shall furnish GMAC Real Estate with all required reports and records. After termination, GMAC Real Estate shall have no further obligations to Member.

    a. **By Member**: If GMAC Real Estate is in breach of this Contract, Member may terminate this Contract effective upon delivery of written notice of termination, provided that Member has delivered to GMAC Real Estate written notice of such breach which specified the breach and GMAC Real Estate fails to cure such breach within thirty (30) days after receipt of the notice of breach or, if the breach is one which may not reasonably be expected to be cured within thirty (30) days, a cure of such breach commenced by GMAC Real Estate within that time and diligently prosecuted thereafter.

11

The giving of a notice of termination by Member pursuant to Paragraph a above shall be deemed to be an irrevocable waiver of the exclusivity of the Licensed Territory granted Member in Section 6 above, and GMAC Real Estate may, during the notice period, license other firms to use the Marks in the Licensed Territory. Further, GMAC Real Estate may, at its option, discontinue placement of referrals and fulfillment of material orders following receipt of a notice of termination given pursuant to this Section.

b.  **Upon Member's Insolvency:** Member shall be deemed in default under this Contract, and all rights granted to Member hereunder shall automatically terminate, without notice to Member, if Member becomes insolvent or makes a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Member or such petition is filed against and is not opposed by Member; or if Member is the subject of any other action or proceeding asserting creditor's rights; or if a final judgment against Member remains unsatisfied or of record for at least thirty days; or if Member is dissolved; or if execution is levied against Member's business or property.

c.  **By GMAC Real Estate**: Member shall be deemed in default under this Contract, and GMAC Real Estate may, at its option, terminate this Contract and all rights granted to Member hereunder, without affording Member any opportunity to cure the default, effective immediately upon receipt of notice by Member from GMAC Real Estate, upon the occurrence of any of the following events:

(1)  If Member at any time ceases to operate or otherwise abandons its real estate brokerage business or closes all of its offices. A closed office shall mean one which is (i) not open and staffed during all regular business hours, or is (ii) not equipped as necessary for the transaction of real estate brokerage activities; provided, however, that if Member's business premises are damaged or destroyed, Member shall have thirty (30) days after such event in which to apply for approval from GMAC Real Estate to relocate or reconstruct the premises, which approval shall not be unreasonably withheld. Member agrees to notify GMAC Real Estate immediately upon the occurrence of any cessation or abandonment of its brokerage business or the closure of all of its offices;

(2)  If the real estate license of Member or any of its principals is suspended, revoked or not renewed, or if Member or any of its principals otherwise forfeits the right to do or transact business in the jurisdiction where the real estate brokerage business is located. Member agrees to notify GMAC Real Estate immediately upon the occurrence of any of the foregoing events;

(3)  If Member or any of its principals conducts its brokerage business in such a fashion as to reflect unfavorably on GMAC Real Estate or the Marks or on the goodwill, good name, and reputation thereof; or if Member engages in any activity in violation of any laws pertaining to the operation of the real estate brokerage business, including laws relating to fair practices and consumer protection. Member agrees to notify GMAC Real Estate immediately upon the filing of any legal action alleging such violations by Member;

12

(4)     If Member or any of its principals purports to transfer any rights or obligations under this Contract or any interest in Member to any third party without GMAC Real Estate's prior written consent, contrary to the terms of Section 16 of this Contract;

(5)     If Member has made any material misrepresentation in its application or Business and Financial History Form; or if Member knowingly maintains false books or records, or submits or makes any false reports or statements to GMAC Real Estate; or

(6)     If Member is in default of any provision of this Contract and previously received a Notice of Termination from GMAC Real Estate for the same, similar, or different default in the preceding 12-month period.

d.  Except as provided in Sections 17.b and 17.c of this Contract, Member shall have thirty (30) days after its receipt from GMAC Real Estate of a written Notice of Termination within which to remedy any default of Member under this Contract and to provide evidence of remedy to GMAC Real Estate.  If any such default is not cured within that time, or such longer period as may be required either by applicable law or by the specific provision of this Contract of which Member is in default, then, in such event, this Contract shall terminate without further notice to Member, effective immediately upon the expiration of the cure period.  Member shall be in default hereunder for any failure to comply substantially with any of the requirements imposed on Member by this Contract, or to carry out the terms of this Contract in good faith.  Such defaults shall include, without limitation, the occurrence of any of the following events:

(1)     If Member fails, refuses, or neglects promptly to pay when due any monies owing to GMAC Real Estate or to submit the financial information required by GMAC Real Estate pursuant to this Contract;

(2)     If Member fails to fulfill its Performance Standards as described in Section 15 or Exhibit A, or fails to maintain any of the other standards or procedures prescribed by GMAC Real Estate in this Contract or otherwise in writing; or

(3)     If Member misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or GMAC Real Estate's rights therein.

## 18.     OBLIGATIONS UPON TERMINATION.

After termination, expiration, transfer, or assignment of this Contract for any reason, Member shall cease to have any right to use the Marks in any manner.  Upon termination or expiration, Member shall:

a.  Discontinue use of all Marks and the words GMAC Real Estate and not hold itself out in any manner that would give the public the impression it is still a licensee of GMAC Real Estate.  Member agrees that GMAC Real Estate shall have the right to secure an order enjoining Member from any use of the Marks.

b.  Pay GMAC Real Estate all monies due on the date the termination or expiration of the Contract became effective and the following additional fees, which shall become due immediately after said date:

(1)  Service Fees, computed as set forth above, on Residential Commission Income attributable to transactions in process on the termination date and from anticipated closings attributable to listings obtained while Member was operating pursuant to the Contract; and

(2)  Referral Fees, computed as set forth above, on referrals sent or received prior to the date the termination or expiration of the Contract became effective.

c.  Surrender to GMAC Real Estate or its authorized representative all signs including yard signs, letterheads, advertising, materials, business cards, and the like bearing the Marks, and return to GMAC Real Estate all manuals, training materials, client promotion materials, and the like bearing the Marks.  Member agrees that GMAC Real Estate shall have the right to secure an order enjoining Member from any use of materials or programs which are part of the Service.

d.  Take immediate steps to cancel all advertising, including advertising in the Yellow Pages of the telephone directory, which carries the Marks.

e.  Execute any documents necessary to effect its obligations under this Section and to take such action as GMAC Real Estate may deem reasonably necessary to evidence the fact that Member has ceased using the Marks and has no further interest or right therein.

If after termination, expiration, or nonrenewal of this Contract, Member shall fail or refuse to comply with any of the requirements of this Section, Member shall reimburse GMAC Real Estate in connection with any legal action taken to enforce compliance, including reasonable collection agency and attorney fees and court costs.

## 19.  REPRESENTATIONS AND WARRANTIES

Member represents that it is licensed to sell real estate where it now operates and that its name is duly registered under applicable law.

Member acknowledges that GMAC Real Estate has delivered to Member not less than ten (10) business days prior to the signing of this Contract a copy of the Offering Circular concerning this franchise for the state in which Member intends to do business, which Member has had an opportunity to review.  Member further acknowledges that GMAC Real Estate has not, either orally or in writing, represented that Member will achieve at the licensed business any specified level of sales or profit, nor represented the sales or profit level of any other licensee, but has referred Member to the Offering Circular which provides Member with the names, addresses and telephone numbers of other licensees of GMAC Real Estate so that Member can make its own inquiry.  Member further acknowledges that any additional inquiry pertaining to the nature of this franchise which Member has made to GMAC Real Estate in writing has been answered in writing to the satisfaction of Member.

14

20. **ENTIRE AGREEMENT.**

This Contract is the entire agreement of the parties and supersedes any and all prior oral or written agreements or understandings between the parties relating to the subject matter of this Contract.

21. **INDEMNIFICATION AND INSURANCE.**

Member shall defend, indemnify, and hold harmless GMAC Real Estate, its agents and employees, from and against any claims for damages, losses, and expenses (including attorney's fees) resulting in any way from the conduct of Member's real estate brokerage business. Maintenance by Member of the insurance coverages specified in the following paragraph shall not be deemed to fulfill Member's indemnification obligation to GMAC Real Estate.

Member shall, at its own expense, purchase and maintain comprehensive general liability insurance, including contractual, products/completed operations, personal injury, and comprehensive automobile liability coverage, including owned, non-owned, and hired automobiles. Minimum limits required are $500,000 per occurrence for bodily injury and $250,000 per occurrence for property damage. GMAC Real Estate must be named as an additional insured. Workers Compensation to the extent required by state law must be carried on each employee. GMAC Real Estate recommends that Member carry errors and omissions insurance coverage to protect Member against losses due to normal operations. Member agrees that all losses resulting from failure to obtain such insurance will be borne by Member. In the event of cancellation, non-renewal, or any material change of Member's required insurance policies, Member must give GMAC Real Estate thirty (30) days' prior written notice. Member will provide a copy of its insurance binder to GMAC Real Estate before the Opening Date and continuous certificates of coverage.

22. **CHOICE OF LAW.**

This Contract shall be construed in accordance with the laws of the state in which Member is licensed to use the Marks. If Member is licensed to use the Marks in more than one state, this Contract shall be construed in accordance with the laws of the state in which Member is incorporated or, if Member is not a corporation, the state in which Member's principal administrative office is located.

23. **MODIFICATION OF CONTRACT.**

No changes may be made in this Contract unless in writing and signed by the parties.

24. **SEVERABILITY**

Each section and provision of this Contract is severable and if one portion is invalid, the remaining portion shall nevertheless remain in full force and effect.

15

## 25. NON-WAIVER.

No failure by GMAC Real Estate to take action on any default of Member, whether it is a single instance or a series of incidents, shall constitute a waiver of such default or of the performance required of Member. No express waiver by GMAC Real Estate of any performance or default of Member shall be construed as a waiver of any other or any future obligation or default.

## 26. NOTICES.

Any notice herein provided for shall be in writing, addressed to GMAC Real Estate at the address in this Contract and to Member at the address indicated below:

> 4618 Dressler Road NW
> Canton, OH 44718

## 27. TERM AND RENEWAL.

The term of this Contract shall be five (5) years.

Member may renew its license as described below if all of the following are true at the expiration of the original term: (a) Member has provided GMAC Real Estate with written notice of its intent to renew at least one hundred eighty (180) days prior to the date of expiration of this Contract and (b) Member is not then and has not been in breach of this Contract. Upon any renewal, Member will execute a new Contract in the form then being offered by GMAC Real Estate. The renewal contract may contain materially different terms than this Contract, including those which relate to fee amount, computation and payment. The renewal contract may also contain performance standards for the renewal term negotiated by the parties as provided by Exhibit A.

If Member continues to use the Marks after the expiration date of this Contract but has failed to execute a renewal Contract or provide notice of non-renewal to GMAC Real Estate, Member will be deemed to be operating on a month-to-month basis under the terms and conditions of the renewal Contract offered Member by GMAC Real Estate. In the event Member desires to terminate its relationship with GMAC Real Estate after expiration of this Contract, but prior to executing a renewal Contract, Member shall be required to give GMAC Real Estate one hundred eighty (180) days' written notice thereof and during the one hundred eighty (180) day period Member will be deemed to be operating under the terms and conditions of the renewal Contract offered Member by GMAC Real Estate.

If Member fails to execute a renewal contract and pay the renewal fee as provided in Section 10.e. within thirty (30) days after the renewal date, GMAC Real Estate may, at its option

16

upon thirty (30) days' notice, terminate Member. If local law requires a longer notice period to Member prior to termination, this Contract shall remain in effect on the month-to-month basis specified in the preceding paragraph until the necessary notice has been given.

**28.   DATE.**

The parties intend that this Contract be executed and effective on
___July 12,_____, 2000_ .

The parties agree the planned Opening Date (Renewal Date) is the 1st day of ___N/A_____, _____. The Opening Date is defined as the date when Member first uses the Marks or the 120th day after the date the Contract is effective, whichever is earlier. In the event the actual Opening Date is different from that specified above, any payment plans based on the specified date will not change and anniversaries of the specified date will determine the start of each contract year for the purpose of computing Service Fees as provided in Section 10.b. If Member is signing this Agreement for a renewal term, the "Opening Date" specified here will be the date used to determine the start of each contract year during the renewal term.

**IN WITNESS WHEREOF**, the parties have executed this Contract.

**GMAC REAL ESTATE, LLC**

By: _____

Title: _____

Date: ___July 21, 2000_____

_____Cutler_____
[Name of Member]

By: _____
(Signature of owner, partner or officer)

Title: _____

By: _____
(Signature of owner, partner or officer)

Title: _____

Date: _____

Contract # 53M/54YTD/80SF

17

## ENDORSEMENT OF PRINCIPALS/SHAREHOLDERS

Each of the principals or shareholders identified in Section 16.b hereby execute this Contract for the limited purpose of being personally bound by the provisions of Sections 3 (The Marks), 4 (Materials), 8 (No Conflicting License) and 16 (Assignment and Ownership) of the Contract.

_____   Date: 8-20-00
James L. Bray

_____   Date: 8-22-00
Jay L. Cutler

_____   Date: 8-22-2000
James H. Camp

_____   Date:_____

_____   Date:_____

_____   Date:_____

_____   Date:_____

18

**Office Locations Exhibit**
Cutler
July 12, 2000

- 4618 Dressler Road NW, Canton, OH 44718 ✓
- 203 Applegrove, North Canton, OH 44720 ✓
- 44 Lincoln Way East, Massillon, OH 44646 ✓
  670 West State Street, Alliance, OH 44601 ✓
  2800 West Market Street, Akron, OH 44333 ✓
- 3653 Darrow Road, Suite 1, Stow, OH 44224 ✓
- 971 East Turkeyfoot Lake Road, Akron, OH 44312 ✓
- 3725 Cleveland-Massillon Road, Norton, OH 44203 closed 8/02
  3930 Fulton Drive NW, Canton, OH 44718 ✓

# Exhibit A (Page 1 of 2)
## Member's Licensed Territory

Member Name: __Cutler__

Approved by _____

City & State: __Canton, OH__

Date: __8-20-00__

### Metes and Bounds Description of Licensed Territory

See Exhibit A, page 2.

(If an Area Map is attached to this Exhibit, this written description defines Member's Licensed Territory)

**Performance Standards**-Member agrees to meet each of the following standards and requirements for retention of the Licensed Territory granted in this Contract:

A. Residential Commission Income-Member shall, during the 12 month period immediately preceding the date specified below, exceed the Residential Income amount set forth:

Residential Commission Income    $ 12,000,000    Date September 1, 2001

Residential Commission Income    $ 12,400,000    Date September 1, 2002

Residential Commission Income    $ 12,900,000    Date September 1, 2003

Residential Commission Income    $ 13,500,000    Date September 1, 2004

Residential Commission Income    $ 14,000,000    Date June 1, 2005

B. Failure by Member to meet the performance standards set forth in this Exhibit shall constitute a default under this Contract. If this default is not cured by Member within 60 day of notice thereof, *GMAC Real Estate* may, at its option, reduce Member's Licensed Territory by removing areas not currently being served by Member or by eliminating all of the Licensed Territory, except for the locations of each of Member's real estate sales offices. If Member's default occurs in conjunction with the expiration of this Contract, *GMAC Real Estate* may offer Member a renewal contract in which Member's Licensed Territory has been modified as provided in the preceding sentence.

# MONTHLY FEE AMENDMENT

## For Certain Franchises Which Became Members Before November 1, 1991

Members previously reporting on a monthly basis, that are current on their financial obligations at the time of renewal, will be allowed to continue to report transactions and pay Transaction Fees and Advertising & Sales Promotion Fees within ten (10) days after the end of each month based on the schedules below. Therefore, the parties agree:

1.    Member shall pay Transaction Fees computed in accordance with the following Monthly Transaction Fee Schedule:

| MONTHLY TRANSACTION FEE SCHEDULE | | | | | |
|---|---|---|---|---|---|
| Member's Year-to-Date Residential Commission Income | Applied Percentage Rate | Member's Year-to-Date Residential Commission Income | Applied Percentage Rate | Member's Year-to-Date Residential Commission Income | Applied Percentage Rate |
| Above -      $1,239,585 | 0.600% | $339,585 -   $347,919 | 1.501% | $110,420 -   $114,584 | 2.575% |
| 1,197,920 -  1,239,584 | 0.608% | 327,085 -   339,584 | 1.530% | 106,250 -   110,419 | 2.605% |
| 1,156,250 -  1,197,919 | 0.617% | 322,920 -   327,084 | 1.547% | 102,085 -   106,249 | 2.635% |
| 1,114,585 -  1,156,249 | 0.625% | 314,585 -   322,919 | 1.586% | 97,920 -   102,084 | 2.665% |
| 1,072,920 -  1,114,584 | 0.634% | 306,250 -   314,584 | 1.614% | 93,750 -   97,919 | 2.696% |
| 1,031,250 -  1,072,919 | 0.642% | 297,920 -   306,249 | 1.643% | 89,585 -   93,749 | 2.726% |
| 989,585 -  1,031,249 | 0.652% | 289,585 -   297,919 | 1.672% | 85,420 -   89,584 | 2.756% |
| 947,920 -   989,584 | 0.678% | 281,250 -   289,584 | 1.699% | 81,250 -   85,419 | 2.786% |
| 910,420 -   947,919 | 0.706% | 272,920 -   281,249 | 1.728% | 77,085 -   81,249 | 2.816% |
| 877,085 -   910,419 | 0.731% | 264,585 -   272,919 | 1.757% | 72,920 -   77,084 | 2.848% |
| 843,750 -   877,084 | 0.758% | 256,250 -   264,584 | 1.786% | 68,750 -   72,919 | 2.878% |
| 814,585 -   843,749 | 0.785% | 247,920 -   256,249 | 1.814% | 64,585 -   68,749 | 2.908% |
| 785,420 -   814,584 | 0.814% | 239,585 -   247,919 | 1.842% | 60,420 -   64,584 | 2.939% |
| 760,420 -   785,419 | 0.839% | 231,250 -   239,584 | 1.872% | 58,335 -   60,419 | 2.969% |
| 735,420 -   760,419 | 0.866% | 222,920 -   231,249 | 1.900% | 56,250 -   58,334 | 3.000% |
| 710,420 -   735,419 | 0.894% | 214,585 -   222,919 | 1.928% | 54,170 -   56,249 | 3.030% |
| 689,585 -   710,419 | 0.920% | 206,250 -   214,584 | 1.958% | 52,085 -   54,169 | 3.061% |
| 668,750 -   689,584 | 0.948% | 197,920 -   206,249 | 1.987% | 50,000 -   52,084 | 3.091% |
| 647,920 -   668,749 | 0.976% | 189,585 -   197,919 | 2.016% | 47,920 -   49,999 | 3.122% |
| 627,085 -   647,919 | 1.002% | 185,420 -   189,584 | 2.045% | 45,835 -   47,919 | 3.154% |
| 606,250 -   627,084 | 1.030% | 181,250 -   185,419 | 2.074% | 43,750 -   45,834 | 3.184% |
| 589,585 -   606,249 | 1.057% | 177,085 -   181,249 | 2.104% | 41,670 -   43,749 | 3.215% |
| 572,920 -   589,584 | 1.085% | 172,920 -   177,084 | 2.132% | 39,585 -   41,669 | 3.246% |
| 556,250 -   572,919 | 1.112% | 168,750 -   172,919 | 2.161% | 37,500 -   39,584 | 3.277% |
| 539,585 -   556,249 | 1.140% | 164,585 -   168,749 | 2.191% | 35,420 -   37,499 | 3.308% |
| 522,920 -   539,584 | 1.166% | 160,420 -   164,584 | 2.220% | 33,335 -   35,419 | 3.338% |
| 506,250 -   522,919 | 1.194% | 156,250 -   160,419 | 2.250% | 31,250 -   33,334 | 3.370% |
| 489,585 -   506,249 | 1.222% | 152,085 -   156,249 | 2.280% | 29,170 -   31,249 | 3.401% |
| 472,920 -   489,584 | 1.250% | 147,920 -   152,084 | 2.309% | 27,085 -   29,169 | 3.432% |
| 456,250 -   472,919 | 1.278% | 143,750 -   147,919 | 2.338% | 25,000 -   27,084 | 3.464% |
| 439,585 -   456,249 | 1.306% | 139,585 -   143,749 | 2.368% | 22,920 -   24,999 | 3.496% |
| 422,920 -   439,584 | 1.333% | 135,420 -   139,584 | 2.398% | 18,750 -   22,919 | 3.527% |
| 406,250 -   422,919 | 1.361% | 131,250 -   135,419 | 2.426% | 14,585 -   18,749 | 3.746% |
| 389,585 -   406,249 | 1.390% | 127,085 -   131,249 | 2.456% | 10,420 -   14,584 | 4.109% |
| 372,920 -   389,584 | 1.417% | 122,920 -   127,084 | 2.486% | 8,333 -   10,419 | 4.608% |
| 356,250 -   372,919 | 1.445% | 118,750 -   122,919 | 2.516% | 6,250 -   8,332 | 5.532% |
| 347,920 -   356,249 | 1.474% | 114,585 -   118,749 | 2.546% | 0.00 -   6,249 | 6.000% |

2.   Member shall pay Advertising & Sales Promotion Fees computed in accordance with the following Monthly Advertising & Sales Promotion Fee Schedule:

| Monthly Residential Commission Income | Monthly Fee Percentage |
|---|---|
| From $416,668 and above | 1.25% |
| From $333,334 to $416,667 | 1.42% |
| From $250,001 to $333,333 | 1.60% |
| From $208,334 to $250,000 | 1.78% |
| From $166,668 to $208,333 | 1.98% |
| Up to $166,667 | 2.20% |

**GMAC REAL ESTATE, LLC**

By: _____

Title: ____ E V P ____

Date: __July 21, 2000__

Cutler
[Name of Member]

By: _____
(Signature of owner, partner or officer)

Title: _____

Date: _____

(page 2 of 2)

## ADVERTISING AMENDMENT #1

## LOCAL ADVERTISING SUPPORT PROGRAM ("LASP") AMENDMENT

### For Certain Franchises Which Became Members Before May 1, 2000

The following Amendment to the Real Estate Service Contract is available to certain Members who have signed the Transaction Fee Amendment and Advertising & Sales Promotion Amendment (the "Amendment").

**Local Advertising.** GMAC Real Estate recognizes the need for Members to increase their local advertising exposure to effectively expand their market shares. Therefore, GMAC Real Estate offers to Member, upon the terms and subject to the conditions following, the Local Advertising Support Program.

1. Only Members who are current in reports and financial obligations to GMAC Real Estate are eligible. For purposes of the LASP program only, current is defined as no fees, product billings, or other charges more than thirty (30) days past due sixty (60) days past invoice date).

2. Member will pay one hundred percent (100%) of the Advertising & Sales Promotion Fee based on Residential Commission Income due under Section 10.b. as amended by the Amendment. GMAC Real Estate will reimburse Member on a partial matching basis ($1.00 for each $2.00 spent) for amounts Member spends on qualified local advertising up to the amount of the Member's annual LASP Budget.

3. The annual LASP Budget will be twenty-five percent (25%) of the total Advertising & Sales Promotion Fees paid by Member during the prior accounting period.

4. Member must present advertising plans for prior approval by GMAC Real Estate so that GMAC Real Estate can determine whether such advertising qualifies for the LASP program.

5. The annual LASP Budget will run for two consecutive six-month periods (January 1 to June 30 and July 1 to December 31). Six-month LASP budgets will be calculated each January and July on Members actual transaction reports filed and Advertising & Sales Promotion Fees paid for the periods May 1 to October 31 and November 1 to April 30 of the previous accounting period. A credit of one-sixth (1/6) of the semi-annual LASP Budget will be allowed for each month the Member's financial obligations were current with GMAC Real Estate during that period. There will be no carryover of LASP account dollars from one year to the next.

6. In the event this Contract is terminated for any reason, Member agrees to reimburse GMAC Real Estate for funds applied to LASP, to the extent the funds exceed the Advertising & Sales Promotion Fees paid in the current calendar year, plus interest.

(page 1 of 2)

7.     Member will receive a monthly statement from GMAC Real Estate showing Member's LASP expenditures and balance.

8.     GMAC Real Estate reserves the right to modify or discontinue LASP at its option upon sixty (60) days' notice to Member prior to January 1 of any year.

**GMAC REAL ESTATE, LLC**

By: _____

Title: _____E V P_____

Date: ___July 21, 2000_____

_____Cutler_____
[Name of Member]

By: _____
(Signature of owner, partner or officer)

Title: _____

Date: _____8-20-00_____

(page 2 of 2)

## ADVERTISING AMENDMENT #2

## SUPER LASP AMENDMENT

### For Certain Franchises Which Became Members Before May 1, 2000

The following amendment to the Real Estate Service Contract is available to certain Members who have signed the Transaction Fee Amendment and Advertising & Sales Promotion Amendment (the "Amendment").

**Local Advertising**. GMAC Real Estate recognizes the benefit of local institutional advertising conducted by its largest Members, and that this benefit justifies placing a limit on Advertising & Sales Promotion Fees of such Members. Therefore, GMAC Real Estate offers to Member, under the limitation defined herein, the Super Local Advertising Support Program (Super LASP).

1. The provisions of this Super LASP Amendment replace the LASP provisions of the Contract and the LASP Amendment thereto, which are hereby stricken.

2. Eligibility for Super LASP funds shalal be determined as follows:

(a) Only Members with an annual Residential Commission Income of $2,500,000 and above are eligible for Super LASP funds.

(b) Only Members who are current in reports and financial obligations to GMAC Real Estate are eligible. For this program, current is defined as no fees, product billings, or other charges more than thirty (30) days past due (60 days past invoice date).

3. Member will pay one hundred percent (100%) of the Advertising & Sales Promotion Fee based on Residential Commission Income due under Section 10.b. as amended by the Amendment. GMAC Real Estate will reimburse Member on a partial matching basis ($1.00 for each $2.00 spent) for amounts Member spends on qualified local advertising up to the amount of the Member's annual Super LASP budget.

4. The annual Super LASP budget will be twenty-five percent (25%) of the total Advertising & Sales Promotion Fees paid by Member during the prior accounting period. The Super LASP budget will be in addition to the regular LASP Budget of twenty-five percent (25%) for a total of fifty percent (50%).

5. Member must present advertising plans for prior approval by GMAC Real Estate so that GMAC Real Estate can determine whether such advertising qualifies for the Super LASP.

6. The annual Super LASP budget will run for two consecutive six-month periods (January 1 to June 30 and July 1 to December 31). Six-month Super LASP budgets will be

calculated each January and July on Member's actual transactions reports filed and Advertising & Sales Promotion Fees paid for the periods May 1 to October 31 and November 1 to April 30 of the previous accounting period. A credit of one-sixth (1/6) of the semi-annual Super LASP budget will be allowed for each month the Member's financial obligations were current with GMAC Real Estate during that period. There will be no carryover of Super LASP account dollars from one year to the next.

7. In the event the Contract is terminated for any reason, Member agrees to reimburse GMAC Real Estate for funds advanced as LASP and Super LASP, to the extent the funds exceed the Advertising & Sales Promotion Fees paid in the current calendar year, plus interest.

8. GMAC Real Estate reserves the right to modify or discontinue Super LASP at its option upon sixty (60) days notice to Member prior to January 1 of any year.

9. The parties desire to establish a maximum annual Advertising & Sales Promotion Fee for qualifying Members. Therefore, in the event Member qualifies for Super LASP and maintains its eligibility as provided herein, Member's maximum net advertising fee (i.e., its Advertising & Sales Promotion Fee calculated pursuant to Section 10.b as amended by the Amendment less LASP and Super LASP reimbursement) shall not exceed fifty thousand dollars ($50,000).

**GMAC REAL ESTATE, LLC**

By: _____

Title: __E U P_____

Date: __July 21, 2000_____

Cutler
_____
[Name of Member]

By: _____
{Signature of owner, partner or officer}

Title: _____

Date: _8-20-00_____

(page 2 of 2)

# Contract Amendment

**GMAC** Real Estate, LLC d/b/a *GMAC Real Estate* of 477 Martinsville Road, Liberty Corner, New Jersey 07938 (herein referred to as *"GMACRE"*), and Member, parties to the *GMACRE* franchise agreement (the "Contract") agree as follows:

**1.     Transition Assistance.**     *GMACRE* will provide materials and funds for Member to convert its identity to *GMAC Real Estate* from *Better Homes and Gardens*. To receive the assistance, Member must:

> 1. Be current on all financial obligations to *GMACRE*.

> 2. Execute a *GMACRE* franchise agreement and the *"Conversion Costs Note"* for the amount stipulated herein.

> 3. Order products through *GMACRE* Marketing Services department from approved suppliers and vendors.

**2.     Amount of Compensation.** The amount of compensation is prescribed by guidelines related to the size and style of exterior office signage, quantity of active residential property listings, and the number of real estate sales professionals associated with Member. Based on these factors, *GMACRE* will finance **$168,654.56** for Member to purchase identity materials, bearing the *GMAC Real Estate* trademark.

**3.     Forgiveness of Indebtedness.**     *GMACRE* will amortize the amount in Paragraph 2 above, along with the shipping charges and applicable sales tax, over the term of the Contract, at an equal monthly rate. In the event Member terminates the Contract or is terminated by *GMACRE* for material breach of the Contract, any unamortized amount shall become due and payable immediately to *GMACRE*.

**4.     Term of the Contract.**     The provisions of Section 26 of the Contract notwithstanding, the parties agree that the term of the Contract shall be extended to <u>October 1, 2005.</u>

IN WITNESS WHEREOF, the parties execute the Amendment, intending it to be effective on <u>July 21, 2000.</u>

**GMAC Real Estate**                                          <u>Cutler & Associates, Inc.</u>

By _____                          By _____

Date   <u>July 21, 2000</u>                                   Date   <u>8-20-00</u>

# AFFILIATE LICENSING ADDENDUM

ADDENDUM to the Contract, effective July 12, 2000, between GMAC Real Estate, LLC d/b/a *GMAC Real Estate* (hereinafter referred to as "*GMACRE*") and Cutler Associates, Inc. (hereinafter referred to as "*Principal Member*").

WHEREAS, *GMACRE* has developed an Affiliate Licensing program in which an established franchisee agrees to allow *GMACRE* to license its name to a new franchisee, hereinafter called an "Affiliate"; and

WHEREAS, Principal Member and *GMACRE* agree to a plan of growth by Principal Member through the Affiliate Licensing program;

NOW, THEREFORE, the parties agree as follows:

1.      **GRANT OF TRADE NAME LICENSE.**  Principal Member hereby grants to *GMACRE* the right to license its trade name, Cutler Associates.  Principal Member warrants that it owns the trade name and has the right to grant this license.  This grant is limited to *GMACRE* licensing the trade name to Affiliates of *GMACRE* recommended by Principal Member.

2.      **WAIVER OF TERRITORIAL EXCLUSIVITY.** Principal Member agrees that the Licensed Territory for which it has an exclusive license to use *GMACRE* trademarks will become a non-exclusive territory with respect to Affiliates.

3.      **MARKETING RESPONSIBILITY.**      *GMACRE* will market the program to prospective Affiliates acceptable to Principal Member.  Affiliates will be subject to the same qualification procedures that apply to other franchisees of *GMACRE*.  Final acceptance of an Affiliate is at the sole discretion of *GMACRE*.  *GMACRE* will accept a prospect as an Affiliate by entering into the then current form of the Affiliate Contract.

4.      **SERVICE RESPONSIBILITIES.** *GMACRE* primarily will be responsible for providing services to Affiliates and collecting fees payable by Affiliates, pursuant to the Affiliate Contract. Principal Member agrees to provide support to Affiliates within its territory, including-- as appropriate--providing orientation sessions for new Affiliates, assisting Affiliates in office operation, and making training programs available to Affiliates.

5.      **AFFILIATE FEE APPORTIONMENT.**  Affiliate fees shall be apportioned between *Better Homes and Gardens* and Principal Member as follows:

   a.      **Joining Fee.**  Affiliate joining fees will be retained by *GMACRE*.

**b.     Transaction Fee.**     Affiliates pay a transaction fee stated as a percentage of all commissions and other fees received from brokerage activities.  The portion of Affiliate transaction fees retained by *GMACRE* shall be an amount equal to **60 percent** of all transaction fees paid by each Affiliate.  Principal Member will be entitled to the balance of the transaction fees paid by each Affiliate.

**c.     Advertising Fee.**     Affiliates pay an advertising fee of 2.20 percent of all commissions and other fees received from brokerage activities.  The portion of Affiliate advertising fees to which *GMACRE* and Principal Member are entitled shall be determined as follows:

    **(1)**     *GMACRE* shall retain 25 percent and Principal Member shall be entitled to the balance of the advertising fees actually paid by Affiliates after Local Advertising Support Program reimbursements have been deducted.

    **(2)**     In the event *GMACRE*, acting in good faith, determines that Principal Member is not using or accounting for Affiliate advertising fees appropriately, *GMACRE* may, at its option, suspend payments of Affiliate advertising fees to Principal Member.

**6.     TREATMENT OF AFFILIATES; RENEWAL.**  Principal Member agrees to treat its Affiliates fairly and on equal terms and will avoid any practices which discriminate among Affiliates.  All programs, services and benefits will be made available on equal terms to each Affiliate.  Principal Member shall not unreasonably refuse to approve *GMACRE* offering renewal contracts to Affiliates located within Principal Member's licensed territory.

**7.     COLLECTION AND ACCOUNTING.**     *GMACRE* will collect the transaction fees and advertising and sales promotion fees due from Affiliates under the Affiliate Contract. *GMACRE* shall account to Principal Member for all fees received from Principal Member's Affiliates and shall disburse any amounts due Principal Member as directed by Principal Member.

**8.     FRANCHISE DISCLOSURES.**     *GMACRE* will prepare the franchise disclosure document required by the Federal Trade Commission and will register this offering in the states where registration is required.  In the event Principal Member participates in the marketing process of prospective Affiliates, it will comply with the directives of *GMACRE* acknowledgment page and will return the signed receipt page to *GMACRE* immediately.

**9.    NOTICE OF AFFILIATE BREACH.**    Principal Member will immediately report to *GMACRE* any material breach by an Affiliate of its Affiliate Contract. *GMACRE* agrees to investigate such alleged breach and advise Principal Member of the disposition of the matter within a reasonable time.

**10.    SURVIVAL.**  In the absence of a written agreement to the contrary, this Addendum shall continue in full force and effect through successive renewals of the franchise agreement. It will, however, automatically terminate upon the termination of said franchise agreement.

IN AGREEMENT HERETO, the parties sign this Addendum, intending to be effective as of July 12, 2000.

**GMAC Real Estate, LLC**

By _____

Date __July 21, 2000____

**Cutler Associates, Inc.**

By _____
        James L. Bray

Date __8-20-00____

(page 3 of 3)

Standard Contracts

# Real Estate Service Affiliate Contract, Amendment 1

As of this 13th day of August, 2002 (the "**Effective Date**"), GMAC Real Estate, LLC ("**GMAC Real Estate**"), having a place of business at 2021 Spring Road, Oak Brook, Illinois 60523, and Wayne Heritage Realty, Inc. ("**Member**"), having a place of business at 228 570 North Market Street, Wooster, Ohio 44691, agree that the Real Estate Service Affiliate Contract (the "Service Contract") between the parties, dated May 11, 1999, and the Affiliate Contract Office Expansion Amendment, dated August 1, 1999, be and are amended as follows:

1.   The office location at 1420 West High Street, Suite 2, Orrville, Ohio 44667 referenced in the Affiliate Contract Office Expansion Amendment, is closed and the license to use the Marks at this office location is removed.

IN WITNESS WHEREOF, the parties execute this Amendment, intending it to be effective as of the Effective Date.

**GMAC Real Estate:**

GMAC Real Estate, LLC

By _____
    Judith O'Brien,
    Vice President

Dated: _____

**Member:**

Wayne Heritage Realty, Inc.

By _____
    Phillip Mariola,
    Owner

Principal Member:

Cutler Associates, Inc.

By _____
    James L. Bray,
    President

Dated: 10-7-02

**Franchise Agreement, Amendment 2**

As of this 1st day of May (the "**Effective Date**"), GMAC Real Estate, LLC ("**GMAC Real Estate**"), having a place of business at 2021 Spring Road, Suite 300, Oak Brook, Illinois, 60523, and E.L. Cutler & Associates, Inc. ("**Member**"), having a place of business at 4618 Dressler Road NW, Canton, Ohio 44718, agree that the Service Contract between the parties, dated July 12, 2000, be and is amended as follows:

1. Section 6 ("Grant of the License") and the "Office Locations Exhibit" is amended to add the office location at 2030 East Avenue, Akron, Ohio 44314.

IN WITNESS WHEREOF, the parties execute this Amendment, intending it to be effective as of the Effective Date.

**GMAC Real Estate:**

GMAC Real Estate, LLC

By _Judith O'Brien_
Judith O'Brien,
Vice President

Dated: May 16, 2002

**Member:**

E.L. Cutler & Associates, Inc.

By _James L. Bray_
James L. Bray
President

Dated: May 10, 2002

# Franchise Agreement, Amendment 3

As of this 16th day of October, 2002 (the "**Effective Date**"), GMAC Real Estate, LLC ("**GMAC Real Estate**"), having a place of business at 2021 Spring Road, Suite 300, Oak Brook, Illinois 60523, and E.L. Cutler & Associates, Inc. ("**Member**"), having a place of business at 4618 Dressler Road NW, Canton, Ohio 44718, agree that the Service Contract between the parties, dated July 12, 2000, be and is amended as follows:

1. The office location referenced in Section 6 of the Real Estate Service Contract ("Grant of the License") and in the Office Locations Exhibit, dated July 12, 2000, at 2030 East Avenue, Akron, Ohio 44314 is changed to 3725 S. Cleveland-Massillon Road, Norton, Ohio 44203. The license to use the Marks at 2030 East Avenue, Akron, Ohio 44314 is removed.

IN WITNESS WHEREOF, the parties execute this Amendment, intending it to be effective as of the Effective Date.

**GMAC Real Estate:**

GMAC Real Estate, LLC

By _Judith O'Brien_
Judith O'Brien,
Vice President

Dated: October ___, 2002

**Member:**

E.L. Cutler & Associates, Inc.

By _James L. Bray_
James L. Bray, President

_Jay L. Cutler_ V P
Jay L. Cutler, Principal

_James H. Camp_
James H. Camp, Principal

Dated: October _____, 2002

# Franchise Agreement, Amendment 4

As of this day of this 13 day of May, 2003, (the **"Effective Date"**), GMAC Real Estate, LLC (**"GMAC Real Estate"**), having a place of business at 2021 Spring Road, Suite 300, Oak Brook, Illinois, 60523, and E.L. Cutler & Associates, Inc. (**"Member"**), having a place of business at, 4618 Dressler Rd., NW, Canton, OH 44718 agree that the Service Contract between the parties, dated July 12, 2000, be and is amended as follows:

1. Section 6 ("Grant of the License") and the "Office Locations Exhibit" is amended to add the office location at 1219 High Street, Suite 106, Wadsworth, OH. 44281

IN WITNESS WHEREOF, the parties execute this Amendment, intending it to be effective as of the Effective Date.

**GMAC Real Estate:**

GMAC Real Estate, LLC

By _Judith O'Brien_

Judith O'Brien,
Vice President

Dated: July ___, 2003

**Member:**

E.L. Cutler & Associates, Inc.

By _James L. Bray_
James L. Bray, President

_Jay L. Cutler_
Jay L. Cutler, Principal

_James H. Camp_
James H. Camp, Principal

Dated: July 3, 2003

# Franchise Agreement, Amendment 5

As of this day of this 12th day of December, 2003, (the "Effective Date"), GMAC Real Estate, LLC ("GMAC Real Estate"), having a place of business at 2021 Spring Road, Suite 300, Oak Brook, Illinois, 60523, and E.L. Cutler & Associates, Inc. ("Member"), having a place of business at, 4615 Dressler Rd. NW, Canton , OH 44718 agree that the Service Contract between the parties, dated July 12, 2000, be and is amended as follows:

1. Section 6 of the Real Estate Service Contract ("Grant of the License") and the "Office Locations Exhibit" is amended to add the office location at 101 E. Highland, Ravenna, OH 44266.

IN WITNESS WHEREOF, the parties execute this Amendment, intending it to be effective as of the Effective Date.

**GMAC Real Estate:**

GMAC Real Estate, LLC

By _____
Judith O'Brian,
Vice President

Dated:   December___, 2003

**Member:**

E.L. Cutler & Associates, Inc.

By _____
James L. Bray, President

By _____
Jay L. Cutler, Principal

By _____
James H. Camp, Principal

Dated: December___, 2003
                Dec. 16, 2003

# Franchise Agreement, Amendment 6

As of this day of this 14th day of April, 2004, (the "**Effective Date**"), GMAC Real Estate, LLC ("**GMAC Real Estate**"), having a place of business at 2021 Spring Road, Suite 300, Oak Brook, Illinois, 60523, and E.L. Cutler & Associates, Inc. ("**Member**"), having a place of business at 4618 Dressler Road, NW, Canton, Ohio 44718 agree that the Service Contract between the parties, dated July 12, 2000, be and is amended as follows:

1. Section 6 of the Real Estate Service Contract ("Grant of the License) is amended to remove 3725 Cleveland-Massillon Road, Norton, Ohio 44203 as a Licensed Site and the license to display Marks at this location is hereby removed.

IN WITNESS WHEREOF, the parties execute this Amendment, intending it to be effective as of the Effective Date.

**GMAC Real Estate:**

GMAC Real Estate, LLC

By _____
Judith O'Brien,
Vice President

Dated: April __, 2004

**Member:**

E.L. Cutler & Associates, Inc.

By _____
James L. Bray,
President

By _____
Ann T. Brennan

Dated: ~~September __, 2003~~ 4/22/04

# EXHIBIT B

## GMAC Home Services

**REAL ESTATE • MORTGAGE • RELOCATION**

August 26, 2005

**VIA FEDERAL EXPRESS**
E.L. Cutler & Associates, Inc.
4618 Dressler Road, N.W.
Canton, Ohio 44718
Attn: Mr. Jay Cutler

         Re:    Real Estate Franchise Agreement
                  Effective July 12, 2000

Dear Mr. Cutler:

      This letter shall serve as formal notice of the terms under which GMAC Real Estate, LLC ("GMAC Real Estate") is willing to extend the Real Estate Franchise Agreement dated July 12, 2000 (the "Franchise Agreement") between E.L. Cutler & Associates, Inc. ("Member") and GMAC Real Estate.

      As we discussed on our August 12, 2005 conference call, GMAC Real Estate is willing to allow Member to continue operating as GMAC Real Estate through January 31, 2006 under the following terms and conditions: (i) Member's Licensed Territory, as set forth in the Franchise Agreement, is removed as of October 1, 2005; (ii) in accordance with the provisions of Section 27 ("Term & Renewal") of the Franchise Agreement, Member shall, beginning on October 1, 2005, pay to GMAC Real Estate, Royalty and Advertising Fees in accordance with the Alternate 1 Royalty & Advertising Fee Schedule set forth in the enclosed 2005 UFOC; and (iii) Strategic Partner shall pay to GMAC Real Estate on October 1, 2005 all amounts due in accordance with the Franchise Agreement, Amendment 7 executed by Member on January 4, 2005.

                        Very truly yours,

                        Susan Daniel
                        Manager, Contract Administration

Encl.
As above

cc: Gloria Newman
    Bill McCullen

PREMIER SERVICE