*PH*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GMAC REAL ESTATE, LLC,         )
                               )
          Plaintiff,           )
                               )
     v.                        )   No. 06 C 3288
                               )
E. L. CUTLER & ASSOCIATES, INC.,)
                               )
          Defendant.           )

## MEMORANDUM OPINION AND ORDER

Defendant E. L. Cutler & Associates, Inc. ("Cutler") has brought a motion to dismiss claims brought by GMAC Real Estate, LLC ("GMACRE") for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), improper venue under FED. R. CIV. P. 12(b)(3), or, in the alternative, to transfer the case to the Northern District of Ohio. On a motion to dismiss for lack of personal jurisdiction or improper venue, I read the complaint liberally and draw all reasonable inferences in favor of the plaintiff. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). Where conflicting evidence is presented, I resolve factual disputes in the plaintiff's favor. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Rotec Indus., Inc., v. Aecon Group, Inc.*, 436 F. Supp.2d 931, 933 (N.D. Ill. 2006). The plaintiff has the burden to demonstrate that venue is proper and that this court has personal jurisdiction over the defendant. *RAR*, 107 F.3d at 1276; *Cent. States, Southeast and Southwest Areas Pension Fund*, 440

F.3d 870, 875 (7th Cir. 2006); *Rotec Indus.*, 436 F. Supp.2d at 933. For the following reasons, I grant defendant's motion to dismiss for lack of personal jurisdiction.

I.

GMACRE is a Delaware limited liability company with its principal place of business in Oak Brook, Illinois. GMACRE is a franchiser of residential real estate brokerage offices, and allows franchisees to use its trade and service marks. GMACRE's principal place of business was in New Jersey prior to February 4, 2002, when it relocated its headquarters to Oak Brook, Illinois. Cutler is an Ohio corporation with its principal place of business in Ohio. Cutler does not maintain any offices in Illinois, does not conduct business in Illinois, and does not derive a substantial amount of its income in Illinois.

On July 21, 2000, Cutler and GMACRE entered into a written real estate service contract (the "service contract") that granted Cutler a GMACRE franchise to operate residential real estate offices within Ohio. GMACRE signed the service contract in New Jersey and forwarded it to Cutler in Ohio, who signed the contract and sent it back to New Jersey. The term of the service contract was originally five years, but the parties later extended it to October 1, 2005. The parties do not contest that the service contract contained a choice-of-law provision dictating that Ohio law govern the contract.

GMACRE contends that, despite the fact that prior to 2002 its principal place of business was in New Jersey, the Oak Brook office is the office from which "virtually every business decision affecting Cutler's franchise was made, the office to which virtually all communications (phone calls and letters) were sent, and the office from which virtually all communications (phone calls and letters) were sent." Specifically, GMACRE presents evidence that standards and procedures for franchises were established in and communicated to franchisees from Oak Brook. In addition, GMACRE states that a portion of the service contract between it and Cutler required Cutler to place all its residential real estate referrals with GMACRE, and in return allowed Cutler to receive referrals for its licensed area from other GMACRE franchisees. GMACRE contends that these referrals all went through Oak Brook for processing, and that Cutler closed on at least nine such referrals, although Cutler contends that payments for such referrals, along with the payments for all other fees due under the contract, were remitted to GMACRE's office in Pennsylvania. In addition, GMACRE contends that Cutler representatives attended an "impact meeting" in Chicago in 2003, and registrations for yearly impact meetings were sent to and processed in Illinois. In general, GMACRE contends that it "supported" Cutler's franchises from Oak Brook from February of 2002 through January of 2006.

GMACRE alleges that in July of 2005, Cutler sent a letter to GMACRE at its Oak Brook headquarters advising GMACRE that it would not renew the service contract. Cutler instead asked to extend the service contract through July 31, 2006. In a letter dated August 26, 2005 (the "August 2005 letter"), showing a return address in New Jersey, GMACRE agreed to extend the service contract under certain conditions. Cutler contends without opposition that this agreement was negotiated between GMACRE's office in New Jersey and Cutler's office in Ohio. GMACRE alleges that those terms were not followed, specifically that Cutler did not pay GMACRE the fees it owed, and that it continued using GMACRE's service and trademarks after the expiration of the service contract (including in the domain name for its website, and in setting up internet search parameters so that consumers searching on the internet for "GMAC Real Estate Ohio" would be directed to the domain name "wwww.cutlergmac.com").

GMACRE has brought claims against Cutler for breach of contract (Counts I and V), cyber piracy under 15 U.S.C. § 1125(d)(1)(A) (2006) (Count II), trademark infringement under 15 U.S.C. § 1114(1) (Count III), and unfair competition under 15 U.S.C. § 1125(a) (Count IV).

II.

I first address Cutler's argument that this court lacks personal jurisdiction over it. A federal court exercising diversity jurisdiction[1] has personal jurisdiction over the defendant if the state in which it sits would have such jurisdiction. *RAR*, 107 F.3d at 1275 (quoting *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995)). This court's exercise of personal jurisdiction must comport with Illinois statutory and constitutional law, and federal constitutional law. *See RAR*, 107 F.3d at 1276. The Illinois long-arm statute provides that an Illinois court may exercise personal jurisdiction "on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. ANN. 5/2-209(c). Therefore, I need only consider whether exercise of personal jurisdiction over Cutler would be proper under the Illinois and federal conceptions of due process.[2]

---

[1] Although plaintiff has brought federal claims, both parties contend for purposes of defendant's motion that this court's subject matter jurisdiction is based on the diversity of the parties.

[2] GMACRE does argue that the Illinois long-arm statute specifically provides for jurisdiction over its claims for various reasons. These arguments are unnecessary because jurisdiction is proper under the long-arm statute as long as the exercise of jurisdiction comports with state and federal due process. *Id.*

5

Under the Due Process Clause of the Illinois Constitution, a court may exercise jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 152 Ill. Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990) (internal citation omitted). Although the Illinois Supreme Court contended in *Rollins* that the due process requirements under the Illinois constitution are distinct from the requirements of federal due process, *see id.*, the Seventh Circuit has since affirmed that it is only in the rare (and perhaps hypothetical) case that the federal due process analysis might actually differ from the Illinois due process analysis. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) ("[W]e note that in no case post-*Rollins* has an Illinois court found federal due process to allow the exercise of jurisdiction in a case where Illinois limits prohibited it.").

Under the Due Process Clause of the Fourteenth Amendment, a defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt Int'l*, 302 F.3d at 716; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). Here, GMACRE argues that this court may exercise "specific" jurisdiction over

Cutler. "Specific" jurisdiction is jurisdiction that arises out of or relates to the defendant's contacts with the forum. *RAR*, 107 F.3d at 1277 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).[3] Minimum contacts are established for purposes of specific jurisdiction when the defendant's contacts with the forum state demonstrate that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, such that the defendant could reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *RAR*, 107 F.3d at 1277 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)).

Here, GMACRE argues that this court has specific personal jurisdiction over Cutler because Cutler purposefully availed itself of the Illinois forum by continuing its business relationship with GMACRE after GMACRE relocated to Illinois, and because GMACRE's claims concern Cutler's breach of a contractual relationship with GMACRE's Illinois office. As the Seventh Circuit has previously held, however, "an out-of-state party's contract with an in-state

---

[3]GMACRE does not contend that this court has "general" jurisdiction over Cutler, which would allow this court to exercise jurisdiction even if GMACRE's claims did not relate to Cutler's contacts with Illinois. To be subject to "general" jurisdiction, Cutler would need to have "continuous and systematic general business contacts" with Illinois. *See id.* (citing *Helicopteros Nacionales*, 466 U.S. at 416).

party is alone not enough to establish the requisite minimum contacts." *RAR*, 107 F.3d at 1277 (citing *Burger King*, 471 U.S. at 478). Instead, "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King*, 471 U.S. at 479).

Here, I find that this court lacks the authority to exercise personal jurisdiction over Cutler. Cutler initially entered into a contractual relationship with GMACRE while GMACRE was based in New Jersey, although it continued doing business with GMACRE and even extended the service contract after GMACRE had relocated to Illinois. GMACRE alleges that Cutler representatives attended at least one meeting in Illinois, and that as part of the service contract Cutler sent real estate referrals to Illinois for processing and received referrals from Illinois.[4] However, the

---

[4]GMACRE also contends that the Oak Brook office was the office from which communications concerning Cutler's franchise were sent and received, but the affidavit supporting this allegation does not specifically state that this office received these communications from or sent them to Cutler at this location. Further, GMACRE contends that Cutler's president had numerous telephone conversations about the service contract with the CEO and Director of GMACRE's parent company who was located in Oak Brook, that Cutler's president attended meetings and events in Oak Brook "three or four times," and even visited the CEO in Illinois on personal visits. Because these conversations took place with the CEO of GMACRE's parent company, and GMACRE has pointed to no evidence that the parent company had any connection to GMACRE's service contract with Cutler, these business calls or personal visits have no bearing on Cutler's minimum contacts with Illinois. Further, the

8

actual breach of contract at issue in this litigation is Cutler's purported breach of its subsequent agreement with GMACRE, memorialized in the August 2005 letter, to extend the service contract to July of 2006. The August 2005 letter was sent to Cutler in Ohio with a return address in New Jersey. The agreement embodied by the August 2005 letter was negotiated by Cutler in Ohio with GMACRE's representatives in New Jersey. The alleged failure by Cutler to pay fees (payable to Pennsylvania) and to perform its post-termination obligations (in Ohio) do not suggest that the breach of contract had any connection to Illinois. Although Cutler representatives may have attended one franchise-related meeting in Illinois and may have sent to and received referrals from GMACRE's office in Illinois, this is not enough to establish that Cutler had minimum contacts with Illinois such that the exercise of personal jurisdiction would comport with the requirements of due process or that Cutler should have foreseen it could be haled into court in Illinois. *See Id.*

GMACRE points to a recent decision from the Northern District of Illinois, also concerning a breach of contract claim brought by GMACRE against one of its franchisees, in which the court determined that the franchisee was subject to personal jurisdiction in Illinois. *See GMAC Real Estate, LLC v. Canyonside Realty, Inc.,*

---

fact that Cutler's president attended a few meetings in Oak Brook is not enough to establish minimum contacts for purposes of due process.

No. 05 C 0572, 2005 WL 1463498, at *6 (N.D. Ill. June 15, 2005). However, the franchisee at issue in that litigation allegedly sent a letter directly to GMACRE's office in Oak Brook repudiating the contract, and the court in that opinion considered this repudiation to be the key contact in Illinois establishing personal jurisdiction over the franchisee. *Id.* at *4. In addition, there was evidence before the court of more significant contacts by that franchisee in Illinois, including that the franchisee submitted financial reports and "requests for financial reimbursements" to GMACRE in Illinois, that it sent letters to GMACRE in Illinois discussing its business relationship with GMACRE, and that it "sought support from [GMACRE] in an effort to improve the franchiser/franchisee relationship with [GMACRE]." *Id.* Here, the evidence is that even after GMACRE relocated to Illinois, Cutler's key contacts with GMACRE were with GMACRE's New Jersey or Pennsylvania offices, and the alleged breach of the contract by Cutler was not directed at Illinois. Cutler had limited contact with GMACRE's Oak Brook office.

GMACRE also contends that Cutler is subject to personal jurisdiction in Illinois because it committed tortious acts in Illinois by infringing on GMACRE's marks, unfairly competing with GMACRE, and committing cyber-piracy (as alleged in Counts II, III and IV of GMACRE's complaint). However, a tortious act is not committed in Illinois merely because Cutler allegedly caused GMACRE

10

economic injury within the state; GMACRE must show that Cutler "entered" the state of Illinois in some fashion. *See Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 412 (7th Cir. 1994) (finding Maryland-based franchise subject to personal jurisdiction in Indiana because defendant entered Indiana through television broadcasts in allegedly infringing on plaintiff's intellectual property rights). Other courts have determined that the "location" of a trademark infringement claim is the location where the defendant attempts to pass off its product as the plaintiff's trademarked product. *See, e.g., Event News Network v. Thill*, No. 05 C 2972, 2005 WL 2978711, at *3 (N.D. Ill. Nov. 2, 2005); *Ultimo, Ltd. v. Ultimo, Inc.*, No. 92 C 2659, 1993 WL 69651, at *3 (N.D. Ill. March 11, 1993). Here, although GMACRE claims that Cutler committed cyber-piracy and infringed upon its marks, it has not shown that Cutler had any contact with Illinois in committing these acts; there is no evidence that Cutler advertised in Illinois, had contact over its website with residents of Illinois, or "competed" with GMACRE in Illinois. Therefore, this is not an appropriate basis for personal jurisdiction over Cutler.

III.

Because I find that this court lacks personal jurisdiction over Cutler, I need not address the venue-related arguments Cutler

has also raised in its motion to dismiss. I therefore grant defendant's motion to dismiss for lack of personal jurisdiction, and dismiss GMACRE's claims.

ENTER ORDER:

_Elaine E. Bucklo_

**Elaine E. Bucklo**
United States District Judge

Dated: October 18, 2006